### H. F. HARDIN v. THE STATE.

No. 15717.   Delivered March 15, 1933.
Reported in 58 S. W. (2d) 118.

The opinion states the case.

*R. B. Cross*, of Gatesville, for appellant.

*Tom L. Robinson*, District Attorney, of Gatesville, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is embezzlement; the punishment, confinement in the penitentiary for three years.

Appellant was secretary of the American Mutual Life Association of Gatesville, which was incorporated under the laws of Texas as a local mutual aid organization. The association issued beneficial certificates, which, upon proof of death of the

holder, entitled the beneficiary to a specified sum of money. The sources of revenue were membership fees, periodical dues and assessments to pay beneficiaries. The collections from assessments went into the mortuary fund, which was used solely for the purpose of paying beneficiaries. Out of the assessments ten cents was retained by appellant. The mortuary fund could not be intermingled with any other fund. The general fund was used by the secretary for the purpose of paying expenses. The association was authorized to anticipate the payment of two or more beneficiaries by keeping in the mortuary fund a sum of money sufficient for that purpose.

During the month of September, 1930, appellant entered into a contract whereby he bought the Central Texas Insurance Company of Mexia, which was a corporation similar to that operated by appellant in Gatesville. Prior to May 15, 1931, appellant was advised by the officials of the insurance department that he could not merge the Gatesville and Mexia associations. Upon receiving this advice, he returned the records of the Central Texas Life Insurance Company to Mexia and sent to one of the officers of the Mexia company a check on the mortuary fund of the Gatesville association for $900 to pay certain claims. With this check appellant enclosed unsigned checks executed in favor of certain named parties, who were beneficiaries under policies in the Mexia association. These checks aggregated $900. One of the checks was executed in the sum of $338 in favor of Mary Emma Hunter, wife of John S. Hunter, deceased, in full settlement of policy No. 176 Class B, with the Central Texas Life Insurance Company of Mexia. The date of this check was May 15, 1931. Upon receiving the check, Mr. Sweatt, treasurer of the Central Texas Life Insurance Company, signed it. Apparently it was delivered to the payee, Mrs. Mary Emma Hunter, as it was paid by the bank after being endorsed "Mary Emma Hunter.' Also the affidavit of Mary Emma Hunter showed that upon the death of her husband, John S. Hunter, she received $338 in full settlement of her claim under her husband's policy in the Central Texas Life Insurance Company of Mexia. On the 8th day of January, 1931, appellant had issued a check on the Central Texas Life Insurance Company for $342, payable to Mrs. Mary Hunter, in settlement of her claim under the policy of her husband, John S. Hunter, in the Mexia company. This check related to the same policy as did the check for $338, issued to Mrs. Hunter on May 15, 1931. On account of an insufficient endorsement the check for $342 was not paid. On November 19, 1931, which was several months after the settlement with Mrs. Hun-

ter, appellant sent out cards assessing members of the American Mutual Life Association of Gatesville for the alleged purpose of paying the beneficiary of John Hunter, deceased. It was stated in the cards that deceased lived near Waco at the time of his death.

In the month of January, 1932, an auditor of the state insurance department made an examination of the records and files of the American Mutual Life Association of Gatesville relative to the assessment made to pay the beneficiary of John Hunter. This examiner testified, in substance, as follows: The members' cards indicated that appellant had collected $439 on the Hunter assessment. However, the records failed to show that this amount had been paid out. The witness had two conversations with appellant about the matter. In the first conversation he asked appellant to show him that the claim on the death of John Hunter had been paid. Appellant replied that he would produce the proof. Some time later appellant showed him a check on a Lampasas bank dated June 2, 1930, indicating that Mrs. Salley Hunter had been paid $1,500. The witness got in touch with the bank at Lampasas. Later he determined that the check had been altered, it being shown that it had been originally issued to Mrs. Mary Weschke. When advised that this check had been altered, appellant fainted. On one occasion appellant stated to the witness that he had collected $561 on the John Hunter claim. The witness testified that during the year 1931 the total collections aggregated $33,-272.60. He was not permitted to testify in response to appellant's question as to the amount the association disbursed.

Appellant's secretary testified that the money collected through the Gatesville office was deposited in the First National Bank of Gatesville. She said one dollar was deposited in the mortuary fund and ten cents in a separate fund for paying operating expenses of the association. She declared that all sums that came in on the Hunter assessment were placed in the First National Bank of Gatesville. She said that a number of insufficient checks were received, and that a proper audit of the affairs of the company could not be made without taking into consideration the worthless checks. Again, she testified that she believed she had issued a policy to John Hunter in the American Mutual Life Association of Gatesville. The records of the Gatesville association did not show that a policy had been issued to John Hunter.

The bank account of the American Life Insurance Association of Gatesville showed that on May 15, 1931, there was a

charge of $900 to cover a check for $900 mailed out of Mexia. The employee of the bank handling the account testified that she had never seen anything that indicated that appellant had used the association's money. When unpaid checks were returned, the bank would charge the entire check against the mortuary fund. In other words, an unpaid check for $1.10 would be charged to the mortuary fund, notwithstanding the fact that ten cents of such check belonged to a different fund.

In the month of September, 1931, a suit was brought against appellant by the Mexia association, and a writ of garnishment issued against the mortuary fund of the Gatesville association in the First National Bank of Gatesville. At the time the writ was issued there was $147.12 in the mortuary account.

A witness for appellant, who had been an auditor in the Insurance Department at Austin, testified that he audited the books and records of the Gatesville association, and found that the total amount collected during 1931 was $33,151.00, and that the total claims paid amounted to $33,068.00. He said the mortuary account was short about $19.00. He declared that there were unpaid assessment checks in appellant's files amounting to more than $300.00.

Appellant did not testify.

The fact that the state relied entirely upon circumstantial evidence was recognized in the charge of the court. The opinion is expressed that the evidence fails to establish that appellant appropriated any of the funds of the association. Aside from the statement made by appellant to the effect that he had collected $561.00 on the John Hunter claim, the state relied upon the entries on the cards and books kept by appellant and his secretary to show that $439.00 was received on the assessment made on John Hunter's death. It was uncontroverted that there were in the files worthless checks aggregating $300.00. It was uncontroverted that $900.00 was drawn out of the mortuary fund to pay certain claims, among them being a claim for $338.00 by Mary Emma Hunter, widow of John Hunter. That this claim was settled was not disputed. That the total of collections and disbursements for the year 1931 were approximately the same was uncontroverted. There was in the mortuary fund when appellant was sued by the Mexia association $147.12, which was more than enough to take care of the $101.00 difference between the assessment on the John Hunter claim and the amount paid Mrs. Mary Hunter. Appellant's action in presenting an altered check when called upon to show that he had paid the John Hunter claim might raise a

suspicion that there was some dishonesty in the transaction. Again, the altered check showing that Salley Hunter and not Mary Hunter had been paid on the John Hunter assessment might raise a suspicion that the assessment was run on a fictitious claim. Be that as it may, there is nothing to show that the money collected was appropriated by appellant. The circumstances must exclude every reasonable hypothesis except that of appellant's guilt. To support a conviction on circumstantial evidence, there must be "proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person" who committed the offense, or "was a participant in its commission." Branch's Annotated Penal Code, sec. 1877; Graves v. State, 43 S. W. (2d) 953, and authorities cited.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.